STATE OF CONNECTICUT *v.* LOUISE HARRIS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 6-43200

Argued March 13—decided May 26, 1967

*John Rose, Jr.,* of New Haven, for the appellant (defendant).

*Frederic H. Cohn,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J.   In a trial to the court, the defendant was found guilty of violating § 53-165 of the General Statutes and has appealed from the judgment. This section, entitled "Resisting officer," reads:   "Any person who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office shall be" punished.   In her assignment of errors the defendant claims that the court erred (1) in finding the defendant guilty of committing specific forbidden acts (delaying the arrest and removal of an intoxicated person by police officers and obstructing and interfering with police officers), whereas the information charged a different crime (resisting an officer); (2) in denying the defendant's motion to dismiss; (3) in failing to correct the finding in certain respects; and (4) in concluding upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt.

The information was in the short form permissible under Practice Book § 493. *State* v. *Davis,* 141 Conn. 319. The first assignment is without merit. As to the second assignment, it is elementary that a decision on a motion to dismiss is not final, does not terminate in judgment, and is not appealable. *State* v. *Boucher,* 119 Conn. 436, 437; Maltbie, Conn. App. Proc. § 212; Kosicki, "The Function of Nolle Prosequi and Motion to Dismiss in Connecticut," 36 Conn. B.J. 159, 170. Nor is it necessary for us to consider the denial of the motion to correct the finding. The rights of the defendant are fully protected under the general assignment of error which requires us to examine all of the evidence contained in the transcript furnished by her; Practice Book §§ 989 (6), 995; to determine whether the court could properly conclude that the state had proven guilt beyond a reasonable doubt. *State* v. *Palkimas,* 153 Conn. 555, 557; *State* v. *Pundy,* 147 Conn. 7, 8.

The evidence discloses the following facts: On September 2, 1966, at about 1:45 a.m., Officer Christensen, a New Haven policeman, observed a Negro, a male adult, staggering on the street in the vicinity of the corner of Newhall and Starr Streets in New Haven. The officer tried to ascertain from the man where he lived, but the man was unable to give a coherent answer. He was intoxicated. The officer radioed police headquarters for a police car. Shortly thereafter, Officers Rhone and Nuterangelo, also New Haven policemen, arrived at the corner of Newhall and Starr Streets in a squad car. The policemen were placing the intoxicated man under arrest on a charge of being found intoxicated, in violation of § 53-246 of the General Statutes, when the defendant appeared on the scene. She lives at 388 Newhall Street, which is in the neighborhood of the corner of Newhall and Starr Streets, and she arrived at the scene in an automobile operated by a

friend, a Mr. Green. She got out of the car, approached the three policemen and the intoxicated person, and asked the officers why they were locking up one of her "black brothers." Officer Rhone answered that the man was being arrested for having been found intoxicated and that he would be released at 6 o'clock in the morning. The defendant acted very put out and said that all the police have to do is to go around locking up black people. Officer Rhone warned her that this was a police matter and that she should leave the area and not interfere. The defendant kept talking and arguing with the policemen in a voice louder than a conversational tone. Two or three persons were attracted to the scene by her intervention in the arrest of the intoxicated person. At one point, when Officer Rhone warned the defendant that he was going to arrest her if she kept interfering, she answered that she had an "organization" behind her. While the defendant was arguing and engaging the attention of the police, the intoxicated person walked away a short distance from the police on three separate occasions. Each time the intoxicated person walked away, the police had to go after him and return and subdue him. On six separate occasions, while the defendant kept talking and arguing, the police warned her that if she did not leave the scene and desist in her conduct she would be arrested for interfering with a police officer. Until her arrival, the police were not having any trouble in placing the intoxicated person under arrest. Fifteen minutes elapsed between the time of the arrival of the defendant at the corner of Newhall and Starr Streets and the time of her arrest for interfering. At the time of her arrest, a vehicle arrived to transport the intoxicated person to headquarters. The defendant did not know the intoxicated person. While the defendant was being

arrested, she used vile or profane words, directed at one or more of the police officers. She refused to go to the police station in the squad car but offered no physical resistance to being taken there in the vehicle in which the intoxicated person had been placed.

The court concluded on the facts stated above that the defendant, through her conduct and constant talking, made more difficult the task of the policemen in placing the intoxicated person under arrest and keeping him in custody, and delayed his removal to the police lockup. The ultimate conclusion reached by the trial court was that the defendant obstructed and interfered with police officers concerned in the administration of justice while in the execution of their office and, as a consequence, was guilty of violating § 53-165.

The sole issue before us is whether the defendant, in what she did, obstructed, resisted or abused the police officers in carrying out their duties, which concededly fell within the definition of the cited statute. It may be stated as a general rule that vilification of an officer—although it might be a violation of another statute (e.g., § 53-174, "Breach of the peace")—does not constitute abuse in contravention of § 53-165 unless it occurred when the officer was "concerned in the administration of justice while in the execution of his office." See *State* v. *Cesero,* 146 Conn. 375, 377 (vilification of officer attempting to execute an invalid search warrant); *Curtis* v. *United States,* 222 A.2d 840, 842 (D.C. App.) (loud protest of unlawful arrest). Where the arrest is illegal, force may be used to resist being detained or placed in custody. *State* v. *Amara,* 152 Conn. 296, 299; *State* v. *Engle,* 115 Conn. 638, 648.

Our statute, § 53-165, as we pointed out in *State* v. *Neubauer,* 2 Conn. Cir. Ct. 169, 172, is intended

to prevent something less than the use of force, whether active or passive, direct or indirect, as may be implied from the other two words, "obstructs" or "resists," all of which serve to define the offense. In the *Neubauer* case, we held that although the vile words used by the defendant toward officers investigating a complaint were such as to constitute "abuse" within the meaning of the statute, the officers were not hindered, obstructed or interfered with in the performance of their duty. "The facts of this case do not meet the test laid down in . . . [*Campf* v. *State*, 80 Ohio St. 321, 328, interpreting a statute containing the same words as our statute], which requires that the vile abuse, unjust censure or invective obstruct the officer in the execution of his office. Our statute requires that the personal abuse shall, in some manner, hinder the officer or make his job difficult." *State* v. *Neubauer*, supra, 173; see such cases as *State* v. *Voelkel*, 2 Conn. Cir. Ct. 459, 468; *State* v. *Grant*, 2 Conn. Cir. Ct. 156, 159; *Speck* v. *State*, 34 Ala. App. 325, 328; *State* v. *Goering*, 193 Kan. 307, 309; *State* v. *Merrifield*, 180 Kan. 267, 270; *People* v. *Krum*, 374 Mich. 356, 361; see also 39 Am. Jur., Obstructing Justice, §§ 8, 10 & Ann. Cum. Sup.

The defendant's principal contention may be summed up in her claim that there could have been no violation of § 53-165 because she used no force nor did she attempt to use any; that she offered no physical hindrance or impediment to the arrest of the intoxicated person or of herself; and that she was powerless to do so because of the number of police officers there present, which would make obstruction, resistance or abuse futile on her part.[1]

---

[1] The defendant testified that during the altercation with the three arresting officers, a police inspector arrived who read to her an ordinance concerning interference with a police officer. Further questioning relative to the purported ordinance was correctly excluded since it was not in evidence.

All she did, it is argued, was to attempt to dissuade the police from carrying out the arrest of the person being held, and that, in itself, was not a violation of § 53-165. "Merely remonstrating with an officer in behalf of another, or criticizing an officer while he is performing his duty, does not amount to an attempt to intimidate or impede him." *Gaston* v. *State,* 239 Miss. 420, 426; see *State* v. *Scott,* 123 La. 1085, 1086. In both of the cited cases, the statute involved was unlike ours and required that the actions or conduct alleged to be illegal must be such as to impede or intimidate an officer in the performance of his duty so that he could not proceed with the arrest without incurring evident risk of serious injury.

In our opinion that is not the law in Connecticut. The proscribed act or conduct under § 53-165 is not one involving a contest of physical strength or forensic skill between the offender and the officer. Nor is the defendant's assumption correct that the act of obstructing, resisting or abusing must be wholly or partially successful and that it must be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute. There was evidence in a sufficient degree from which the court could conclude that the defendant was guilty of violating § 53-165. Cf. *Edwards* v. *Hartford,* 145 Conn. 141, 143, 145.

There is no error.

In this opinion PRUYN and JACOBS, Js., concurred.