STATE of Iowa, Appellee,

v.

Robert DONNER et al., Appellants.

No. 57922.

Supreme Court of Iowa.

June 30, 1976.

Glenn E. Pille, Des Moines, and Stanley D. Lamfers, Chariton, for appellants.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and William L. Shelton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Defendants Robert Donner, Howard Dean Roush, James Hawk, and Larry Richard appeal their convictions and sentences for resisting an officer in the discharge of his duties in violation of § 742.1, The Code. The charges arose from a melee which occurred in the Hurribak Club in Chariton in the early morning of January 21, 1974, when two Chariton police officers attempted to take defendant Richard to the police station after arresting him for violation of a Chariton obscenity ordinance. Defendants contend the trial court erred in overruling their demurrer alleging Code § 742.1 is unconstitutional on grounds of vagueness and overbreadth, in overruling their exceptions to an instruction, and in overruling their motions for directed verdict challenging the sufficiency of evidence for jury submission. We affirm the trial court.

Summarized in its light most favorable to the verdicts, the evidence showed Chariton police officers Ricky J. Cairnes and Dennis Wetzel entered the Hurribak Club in Chariton at about 12:15 a. m. on January 21, 1974, while on routine patrol. They were in uniform. About 50 persons were in the small tavern. Defendant Richard, seated in a booth with defendant Donner, directed an obscene remark at officer Cairnes. When the officer cautioned him, he repeated the remark.

Cairnes and Wetzel left the tavern and went to the police station where Cairnes placed a telephone call to a magistrate. The magistrate advised Cairnes he had authority to arrest Richard for obscenity under a Chariton ordinance, and bail on such an arrest would be $100. Cairnes and Wetzel proceeded back to the tavern.

They found Richard standing near the rear of the main room of the tavern. Cairnes notified him he was under arrest for obscenity and told him to step outside. Other persons in the tavern began to shout that no one was going to take Richard from the tavern. Cairnes and Wetzel started to take Richard through a small storage room toward the rear exit. Defendants Donner, Roush and Hawk stood at the rear door and told the officers they were not going to take Richard anywhere. They offered to post bail, which the officers said they had

no authority to receive. The officers insisted Richard would have to go to jail until bail was posted with the magistrate.

At that point Richard's left arm was being held by Cairnes and his right arm by Wetzel. Donner, Roush and Hawk began pushing the officers back toward the main room of the tavern. The officers lost hold of Richard who grabbed the door frame to prevent the officers from pulling him out the rear exit. About 15 or 20 persons entered the storage room and participated in the pushing and shoving.

During the confusion which ensued, officer Wetzel's coat was torn, his tie was torn off, and he lost his wristwatch. Cairnes lost his tie and several buttons from his shirt. After several minutes of struggle, a brother of defendant Roush interceded and persuaded the crowd to let the officers leave with Richard. The officers took Richard to the police station. Subsequently they filed the present charges.

Defendants were tried in Union County on a change of venue. After conviction in a joint trial, they brought this appeal.

Three questions are presented: (1) did the trial court err in overruling defendants' demurrer to the charges? (2) did the court err in instructing the jury on the meaning of "resisting an officer"? (3) did the court err in overruling defendants' motions for directed verdict challenging the sufficiency of the evidence?

I. *The demurrer.* The trial court overruled defendants' pretrial demurrer in which they attacked the portion of § 742.1 under which they were charged on grounds of vagueness and overbreadth.

Section 742.1 provides:

"*If any person* knowingly and willfully resist or oppose any officer of this state, or any person authorized by law, in serving or attempting to execute any legal writ, rule, order, or process whatsoever, or *shall knowingly and willfully resist any such officer in the discharge of his duties without such writ, rule, order, or process, he shall be imprisoned in the county jail not exceeding one year, or be fined not exceeding one thousand nor less than fifty dollars, or be both fined and imprisoned, at the discretion of the court.*"

Defendants were charged under the portion of § 742.1 which is italicized.

They contend the words "resist" and "duties" are vague and the phrase "discharge of his duties without such writ, rule, order, or process" is overbroad.

The concepts of vagueness and overbreadth as grounds for attack on statutes under the due process clause of the Fourteenth Amendment of the United States Constitution are fully explained in a number of our recent cases and those explanations need not be repeated here. See *State v. Pilcher,* 242 N.W.2d 348 (Iowa), filed May 19, 1976; *State v. Williams,* 238 N.W.2d 302 (Iowa 1976); *State v. Price,* 237 N.W.2d 813 (Iowa 1976); *State v. Aldrich,* 231 N.W.2d 890 (Iowa 1975); *State v. Willis,* 218 N.W.2d 921 (Iowa 1974); *State v. Kueny,* 215 N.W.2d 215 (Iowa 1974).

A statute is not vague when the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to the common law, to the dictionary, or if the words themselves have a common and generally accepted meaning. Since the exceptions permitting defendants to attack statutes as vague in their application to other situations are not applicable here, these defendants must establish that the statute is vague in its application to the conduct with which they are charged.

Similarly, although a statute is overbroad if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily into areas of protected freedoms, these defendants have standing only to challenge the statute as overbroad as applied to the conduct alleged here.

The words "resist" and "duties" are not vague as applied here.

Black's Law Dictionary defines the word "resist" as follows: "To oppose.

This word properly describes an opposition by direct action and *quasi* forcible means." The word has this meaning in § 742.1. Black also defines "resisting an officer": "In criminal law, the offense of obstructing, opposing and endeavoring to prevent (with or without actual force) a peace officer in the execution of a writ or in the lawful discharge of his duty while making an arrest or otherwise enforcing the peace." This definition also has relevance here.

The word "resist" as used in § 742.1 is limited to obstructive conduct but does not require the employment of actual violence or direct force. It is sufficient if the person charged engaged in actual opposition to the officer through the use of actual or constructive force making it reasonably necessary for the officer to use force to carry out his duty. *Caldwell v. State,* 32 Ala.App. 228, 23 So.2d 876 (1945); *Appling v. State,* 95 Ark. 185, 128 S.W. 866 (1910); *In re Bacon,* 240 Cal.App.2d 34, 49 Cal.Rptr. 322 (1966); *State v. Avnayim,* 24 Conn.Sup. 7, 1 Conn.Cir. 348, 185 A.2d 295 (1962); *State v. Harris,* 4 Conn.Cir. 534, 236 A.2d 479 (1967); *State v. Goering,* 193 Kan. 307, 392 P.2d 930 (1964). Although words or even threats alone do not constitute resistance, threats accompanied by present ability and apparent intention to execute them would be sufficient. *State v. Welch,* 37 Wis. 196 (1875). The word "resist" in § 742.1 is not vague.

The word "duties" as used in § 742.1, insofar as applicable here, is equally clear. Peace officers are charged with the duty to make arrests. § 748.4, The Code. The officers were unquestionably carrying out that duty here. See *State v. Graham,* 203 N.W.2d 600, 603 (Iowa 1973); § 755.4(1), The Code.

■ Further, for the same reason, defendants cannot successfully urge the phrase "discharge of his duties without such writ, rule, order, or process" is overbroad as applied to their conduct. The officers' duty to make a warrantless arrest did not threaten any constitutionally protected freedom of defendants.

The trial court did not err in overruling defendants' demurrer.

■ II. *The instruction.* The trial court instructed the jury that resistance of an officer within § 742.1 could occur "with or without actual force". Defendants took timely exception to the instruction on the ground the statute requires that the resistance involve actual force.

The trial court's explanation of the offense accords with our interpretation of the statute in Division I. The offense may occur without the use of actual force so long as the conduct in opposition to the officers makes it reasonably necessary for the officers to use force to carry out their duty.

The trial court did not err in overruling defendants' exception to the instruction.

■ III. *Sufficiency of the evidence.* Viewing the evidence in its light most favorable to the State, we find the charge against each defendant was supported by substantial evidence.

The trial court did not err in overruling defendants' motions for directed verdict. *State v. Davis,* 229 N.W.2d 249, 251 (Iowa 1975).

We find no reversible error.

AFFIRMED.