**IN THE COURT OF APPEALS OF IOWA**

No. 12-1875
Filed April 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONTRAYIUS EUGENE CAREY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James D. Coil,

District Associate Judge.

        Defendant appeals his convictions for possession of a controlled

substance (cocaine) and interference with official acts causing bodily injury.

**AFFIRMED.**

        Steven J. Drahozal of Drahozal Law Office, P.C., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Peter Blink, Assistant

County Attorney, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**DANILSON, C.J.**

Dontrayius Carey appeals his convictions for possession of a controlled substance (cocaine) and interference with official acts causing bodily injury. Carey contends the district court abused its discretion in denying his motions for new trial, as both of the jury's verdicts were contrary to the weight of the evidence. Specifically, regarding his first conviction, he maintains the weight of the evidence does not support that he had actual or constructive possession of the cocaine. As to the second charge, he maintains the weight of the evidence does not support that he "inflicted" injury on the officer during the struggle. Because there was circumstantial evidence of actual possession of the drugs, and there was evidence that Carey inflicted bodily injury while interfering with the officer's arrest of Carey, the district court did not abuse its discretion in denying Carey's motions for a new trial. We affirm.

**I. Background Facts and Proceedings.**

On September 5, 2011, Waterloo Police Officers Matt McGeough and Mark Nissen were patrolling by car at approximately 9 p.m. The officers observed an individual, later learned to be Carey, riding a bicycle without a rear bike light or bike reflector. The officers followed Carey as he turned onto another street. The officers observed Carey was riding on the wrong side of the road. As they continued to follow him, Carey drove his bike through an intersection without stopping at the stop sign.

Officer Nissen then activated the emergency lights on the vehicle to initiate a stop of Carey. When Carey continued riding the bike, Officer Nissen blew an air horn three times. Carey continued to ride. The officers then pulled

the patrol car next to Carey and ordered him to stop. Carey pulled to the side of the road and stopped his bicycle. The officers exited the car, noting that Carey had both of his hands in the front pocket of his hooded sweatshirt. Officer Nissen issued multiple orders to Carey to "get your hands out" and "get your hands up," but Carey continued "digging" in his pocket. Officer McGeough testified that Carey's failure to comply with Officer Nissen's orders was a safety concern and indicated to him that Carey may have a weapon.

Officer McGeough stepped in and grabbed Carey's right arm. Carey resisted by trying to pull his arm away. During the ongoing struggle between Carey and Officer McGeough, both ended up on the ground with Carey laying prone against the cement. Officer McGeough continued trying to remove Carey's hand from his pocket while Carey resisted. As a result of the struggle, Officer McGeough sustained abrasions on his knuckles, wrist, and elbow.

Because Carey still refused to comply with orders, Officer Nissen sprayed Carey with pepper spray. Carey then became compliant and was handcuffed. Carey was taken to the front of the police car and searched. The police did not find any evidence on Carey.

During the struggle, Officer Nissen called for backup. The backup officers, including Officer Frein, arrived while Carey was being searched. Using flashlights because of the dimness of the light upon the street, the officers searched the area of the struggle for evidence. Officer Frein discovered a small plastic bag containing a white substance, later confirmed to be cocaine. The bag was clean and free of debris although the street was covered in sand and had oil

spots. Officer McGeough also located a cell phone in the area, which Carey admitted was his. The officers did not see Carey drop the phone.

Carey was charged with possession of a controlled substance (cocaine) and interference with official acts causing bodily injury. After a jury trial, he was found guilty of both counts.

Carey filed a motion for new trial. A hearing on the motion was held August 29, 2013. The district court denied the motion in a written order filed September 13, 2013. Carey appeals.

## II. Standard of Review.

The district court has broad discretion in ruling on a motion for new trial, and thus, our review is for an abuse of discretion. *State v. Nichter*, 720 N.W.2d 547, 559 (Iowa 2006). To establish such an abuse, the challenger must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). We are slower to interfere with the grant of a new trial than with its denial. Iowa R. App. P. 6.904(3)(d).

## III. Discussion.

A district court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence. Iowa R. Crim. P. 2.24(2)(b)(6). "[C]ontrary to . . . evidence" means "contrary to the weight of the evidence." *Reeves*, 720 N.W.2d at 201. In our review, we limit ourselves to the question of whether the trial court abused its discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *Id.* at 203.

**A. Possession of a Controlled Substance.**

Carey maintains the weight of the evidence did not support a finding he was in actual possession[1] of the cocaine found on the street. We disagree.

Actual possession may be shown by direct or circumstantial evidence. *Vance*, 790 N.W.2d at 784. "Circumstantial evidence is equally probative as direct evidence for the State to prove a defendant guilty beyond a reasonable doubt." *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011).

Carey relies upon the principle that "mere proximity to where the drugs are found is not enough to show constructive possession." *State v. Cashew*, 666 N.W.2d 566, 572–73 (Iowa 2003). However, the State does not contend that Carey had constructive possession of the drugs as they laid upon the streets. Rather, the State claims the circumstantial evidence proved that Carey had actual possession of the drugs before his encounter with the law enforcement officers.

Here, Carey initially refused pull over when Officers Nissen and McGeough initiated a stop. Even after pulling over, he refused to remove his hands from his pocket, continuing to "dig around" rather than comply with the officers' orders. Carey struggled against Officer McGeough when he tried to remove Carey's hand from Carey's pocket. After Carey was subdued, the officers located the bag of cocaine in the vicinity of the struggle. It was clean although it was located in an area where a car's tire was likely to run over it and

---

[1] The jury instruction regarding actual possession advised, "A person who has direct physical control over a thing on his person is in actual possession of it." It can be shown by circumstantial evidence that a person at one time had actual possession of the contraband. *See State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010).

the area of the street it was found on was dirty. Carey was the only civilian on the street between the time he pulled over and when the cocaine was found. Neither Officer Nissen nor Officer McGeough saw Carey drop or discard his cell phone. Notwithstanding, the officers also found a cell phone in the vicinity of the struggle, which Carey admitted was his. The jury could have concluded under these facts that the drugs, like the cell phone, were also in Carey's possession before the encounter.

"Except in the extraordinary case, where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). The circumstantial evidence supports the jury's finding, and the district court did not abuse its discretion in overruling Carey's motion for new trial.

### B. Interference with Official Acts Causing Bodily Injury.

Carey also maintains the weight of the evidence does not support the jury's guilty verdict of interference with official acts inflicting bodily injury. Specifically, Carey challenged the finding he *inflicted* Officer McGeough's bodily injuries. In support of his contention, Carey relies on our unpublished opinion, *State v. Dudley*, No. 11-0413, 2012 WL 170738, at *5 (Iowa Ct. App. Jan. 19, 2012), in which we stated, "The State was required to prove more than that [the defendant's] resistance resulted in bodily injury. The State was required to show some affirmative action by [the defendant] directed at the officer caused the officer bodily injury."

The facts in the present case are readily distinguishable from those in *Dudley*. In *Dudley*, the defendant was riding his bicycle without a headlight. 2012 WL 170738, at *1. The officer intended to inform the defendant it was against a city ordinance to do so and asked the defendant to stop. *Id.* When the defendant continued to ride past the officer without stopping, the officer grabbed the defendant's arm and tackled him while on the moving bicycle. *Id.* As a result of tackling the defendant, the officer suffered an abrasion to his knee. *Id.* Our court vacated the defendant's conviction for interference with official acts inflicting injury, "noting the language chosen [in the statute] conveys the idea of '*active interference*'" by the defendant. *Id.* at *4 (quoting *State v. Smithson*, 594 N.W.2d 1, 2–3 (Iowa 1999)).

In its order denying Carey's motion for new trial, the district court stated:

> In [*Dudley*], the Court of Appeals determined that the act of fleeing the officer, while an intentional act, did not "inflict" the injury to the officer but rather it was the officer's acts which were the cause of his injuries. In the instant case, the defendant's act of struggling with officers was also an intentional act, which [ ] did inflict the injuries to Officer McGeough. . . . The [S]tate does not have to prove that the defendant specifically intended to cause injury to McGeough but rather that his intentional act of struggling with McGeough was the causative factor in McGeough's injuries.

We agree. The district court did not abuse its discretion in denying Carey's motion for new trial. We affirm.

**AFFIRMED.**